**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

RAFAEL E. PEREZ, individually and on
behalf of all others similarly situated,

             *Plaintiffs,*

v.

TARGET CORPORATION, BRIAN C.
CORNELL, MICHAEL J. FIDDELKE, A.
CHRISTINA HENNINGTON, and JOHN
J. MULLIGAN,

             *Defendant*s.

Case No. 0:23-cv-00769-JMB-DTS

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF
THEIR MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................... 1

I.     Plaintiffs Fail to Plead Falsity ................................................................. 2

     A.     Plaintiffs Cannot Plead Falsity of Business Model/Inventory Statements Through Speculation. ................................................. 3

     B.     Plaintiffs Cannot Plead Falsity of Markdown Statements by Hindsight. ....................................................................................... 7

II.     Plaintiffs Fail to Plead Scienter ............................................................. 9

     A.     Plaintiffs Cannot Overcome the Competing Nonfraudulent Inference. ...................................................................................... 9

     B.     Plaintiffs' Allegations Don't Support Scienter. ......................... 10

          1.     Purported "Admissions" Don't Support Scienter. ........... 10

          2.     Purported Access to Unspecified Data Doesn't Support Scienter. ...................................................................... 11

          3.     Purported Site Visits Don't Support Scienter. ................. 13

          4.     Core Operations Isn't Viable and Doesn't Support Scienter. .......... 13

          5.     Trades Underscore Implausibility of Plaintiff's Theory. ................. 14

III.     The Statements Are Inactionable for Independent Reasons. ................... 16

     A.     The Demand Warnings Are Inactionable. ................................... 16

     B.     The Insight/Flow/Investment Statements Are Immaterial Puffery. ............ 17

     C.     Forward-Looking Statements Can Include Present-Tense Verbs. .............. 18

     D.     Target's Opinion Statements Are Inactionable. ......................... 19

CONCLUSION ................................................................................................... 19

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*3M Sec. Litig.*,
2021 WL 4482987 (D. Minn. Sept. 30, 2021) ....................................................... 2, 13

*Baron v. Hyrecar*,
2022 WL 17413562 (C.D. Cal. Dec. 5, 2022) ............................................................ 4

*Berson v. Applied Signal Tech.*,
527 F.3d 982 (9th Cir. 2008) ...................................................................................... 4

*Biogen Sec. Litig.*,
857 F.3d 34 (1st Cir. 2017) ........................................................................................ 13

*BioMarin Pharms. Sec. Litig.*,
2022 WL 164299 (N.D. Cal. Jan. 6, 2022) ................................................................ 4

*Cardinal Health Sec. Litig.*,
426 F. Supp. 2d 688 (S.D. Ohio 2006) ...................................................................... 15

*CarLotz Sec. Litig.*,
2024 WL 1348749 (S.D.N.Y. Mar. 29, 2024) ........................................................... 12

*CenturyLink Sales Practices & Sec. Litig.*,
403 F. Supp. 3d 712 (D. Minn. 2019) ................................................................... 12, 18

*Ceridian Corp. Sec. Litig.*,
542 F.3d 240 (8th Cir. 2008) ..................................................................................... 10

*Cerner Sec. Litig.*,
425 F.3d 1079 (8th Cir. 2005) ..................................................................................... 4

*Citiline v. iStar Fin.*,
701 F. Supp. 2d 506 (S.D.N.Y. 2010) ....................................................................... 12

*City of Birmingham Firemen's and Policemen's Supp. Pens. v. Ryanair*,
2020 WL 2834857 (S.D.N.Y. June 1, 2020) ............................................................. 11

*City of Providence v. Aeropostale*,
2013 WL 1197755 (S.D.N.Y. Mar. 25, 2013) ....................................................... 8, 18

*City of Sunrise Gen. Empls. v. Fleetcor Techs*,
    2018 WL 4293143 (N.D. Ga. May 15, 2018) ................................................ 4

*Cornelia I. Crowell GST Trust v. Possis Med.*,
    519 F.3d 778 (8th Cir. 2008) ..................................................................... 16

*D.E.&J P'ship v. Conaway*,
    284 F. Supp. 2d 719 (E.D. Mich. 2003), *aff'd*, 133 F. App'x 994 (6th
    Cir. 2005) ...................................................................................................... 2

*Dentsply Sirona Sec. Litig.*,
    665 F. Supp. 3d 255 (E.D.N.Y. 2023) ....................................................... 12

*Elam v. Neidorff*,
    544 F.3d 921 (8th Cir. 2008) ............................................................... 14, 15

*Evanston Police Pension Fund v. McKesson*,
    411 F. Supp. 3d 580 (N.D. Cal. 2019) ....................................................... 15

*Facebook Sec. Litig.*,
    87 F.4th 934 (9th Cir. 2023) ...................................................................... 17

*Ferreira v. Funko*,
    2021 WL 880400 (C.D. Cal. Feb. 25, 2021) ........................................... 4, 17

*Ferreira v. Funko*,
    2021 WL 8820650 (C.D. Cal. Oct. 22, 2021) ............................................. 17

*Freudenberg v. E*Trade*
    712 F. Supp. 2d 171 (S.D.N.Y. 2010) ........................................................ 16

*Galestan v. Onemain*,
    348 F. Supp. 3d 282 (S.D.N.Y. 2018) ........................................................ 12

*Glazer Cap. Mgmt. v. Forescout Techs.*,
    63 F.4th 747 (9th Cir. 2023) ........................................................................ 4

*Harman Int'l Indus. Sec. Litig.*,
    791 F.3d 90 (D.C. Cir. 2015) ................................................................... 5, 18

*Horizon Asset Mgmt. v. H&R Block*,
    580 F.3d 755 (8th Cir. 2009) ..................................................................... 10

*Hutchinson Tech. Sec. Litig.*,
    536 F.3d 952 (8th Cir. 2008) .................................................................... 3, 7

iv

*IBEW Local 98 Pension Fund v. Best Buy*,
    958 F. Supp. 2d 1065 (D. Minn. 2013) ........................................................................ 12

*Institutional Invs. Grp. v. Avaya*,
    564 F.3d 242 (3d Cir. 2009) ........................................................................................ 9

*K-tel Int'l Sec. Litig.*,
    300 F.3d 881 (8th Cir. 2002) ............................................................................... 2, 15

*Kempen Int'l Funds v. Syneos Health*,
    2024 WL 1805011 (S.D.N.Y. Apr. 25, 2024) ........................................................... 3

*Kushner v. Beverly Enters.*,
    317 F.3d 820 (8th Cir. 2003) ..................................................................................... 12

*Lefkoe v. Jos.A.Bank Clothiers*,
    2007 WL 6890353 (D. Md. Sept. 10, 2007) ......................................................... 9, 12

*Mart v. Tactile*
    595 F. Supp.3d 788 (D. Minn. 2022) ........................................................................ 15

*Medtronic Sec. Litig.*,
    618 F. Supp.2d 1016 (D. Minn. 2009), *aff'd*, 621 F.3d 800 (8th Cir.
    2010) .............................................................................................................. 7, 12, 15

*Morgan Distrib. v. Unidynamic*,
    868 F.2d 992 (8th Cir. 1989) ................................................................................... 6, 7

*Nash Finch Sec. Litig.*,
    502 F. Supp. 2d 861 (D. Minn. 2007) ............................................................ 4, 15, 17

*Navarre Sec. Litig.*,
    299 F.3d 735 (8th Cir. 2002) ................................................................................ 3, 15

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000) ........................................................................... 9, 10, 18

*NVE Sec. Litig.*,
    551 F. Supp. 2d 871 (D. Minn. 2007), *aff'd*, 527 F.3d 749 (8th Cir.
    2008) ............................................................................................................................ 4

*Patterson Sec. Litig.*,
    479 F. Supp. 2d 1014 (D. Minn. 2007) ...................................................................... 6

*Plumbers & Pipefitters v. Davis*,
    2020 WL 1877821 (S.D.N.Y. Apr. 14, 2020) ........................................................... 5

v

*Pound v. Stereotaxis*,
    8 F. Supp. 3d 1157 (E.D. Mo. 2014).................................................................. 5, 8, 12

*QuantumScape Sec. Litig.*,
    580 F. Supp. 3d 714 (N.D. Cal. 2022) ........................................................................ 4

*Ret. Fund v. Tile Shop*,
    94 F. Supp. 3d 1035 (D. Minn. 2015) ....................................................................... 18

*Ret. Sys. v. Dell*,
    2016 WL 6075540 (W.D. Tex. Sept. 16, 2016)........................................................ 10

*Ret. Sys. v. Nat'l Vision*,
    2024 WL 1376016 (N.D. Ga. Mar. 30, 2024).............................................................. 8

*Salix Pharms.*,
    2016 WL 1629341 (S.D.N.Y. Apr. 22, 2016).......................................................... 12

*San Antonio Fire and Police Pension Fund v. Dentsply Sirona*,
    2024 WL 1898512 (S.D.N.Y. May 1, 2024) .............................................................. 5

*Schoenfeld v. U.S. Resort Mgmt.*
    2007 WL 2363500 (W.D. Mo. Aug. 16, 2007)........................................................... 6

*Shoemaker v. Cardiovascular Sys.*,
    2017 WL 1180444 (D. Minn. Mar. 29, 2017) ......................................................... 14

*Shoemaker v. Cardiovascular Sys.*,
    300 F. Supp. 3d 1046 (D. Minn. 2018) ...................................................................... 5

*Siracusano v. Matrixx Initiatives*,
    585 F.3d 1167 (9th Cir. 2009) ................................................................................. 17

*St. Jude Medical Sec. Litig.*,
    836 F. Supp. 2d 878 (D. Minn. 2011)......................................................... 11, 12, 17

*Steamfitters Loc.449 v. SleepNumber*,
    2023 WL 4421688 (D. Minn. July 10, 2023) ............................................................. 3

*Stratasys S'holder Sec. Litig.*,
    864 F.3d 879 (8th Cir. 2017) .............................................................................. 17, 18

*Target Sec. Litig.*,
    275 F. Supp. 3d 1063 (D. Minn. 2017), *aff'd*, 955 F.3d 738 (8th Cir.
    2020) ........................................................................................................................... 9

*Tellabs v. Makor Issues & Rights*,
    551 U.S. 308 (2007)............................................................................................ 2, 9

*Tr. of Welfare and Pension Funds of Loc.46A v. Medtronic*,
    2024 WL 1332262 (D. Minn. Mar. 28, 2024) ......................................*passim*

*Turocy v. El Pollo Loco*,
    2017 WL 3328543 (C.D. Cal. Aug. 4, 2017)............................................. 12

*Tyson Sec. Litig.*,
    275 F. Supp.3d 970 (W.D. Ark. 2017)....................................................... 16

*U.S. Bank v. PHL Variable*,
    2013 WL 791462 (S.D.N.Y. Mar 5. 2013) ................................................ 18

*Waswick v. Torrid*
    2023 WL 9197563 (C.D. Cal. Dec. 1, 2023) ............................................ 18

*Yellen v. Hake*,
    437 F. Supp. 2d 941 (S.D. Iowa 2006) ........................................................ 8

*Zucco Partners v. Digimarc*,
    552 F.3d 981 (9th Cir. 2009) ..................................................................... 14

**Statutes**

15 U.S.C. §78u-5(c)............................................................................................ 7

# INTRODUCTION[1]

Plaintiffs' Opposition confirms this action alleges fraud-by-hindsight. Plaintiffs work backwards from inventory markdowns—ignoring the causes, including the Pandemic (which supercharged demand and snarled supply-chains)—and assert that Target *knew* its procurement strategy was doomed from the start. Aside from being implausible, such theories are routinely rejected: failing to see the future is not securities fraud. Plaintiffs fail on two key elements. ***Each independently requires dismissal***.

**Falsity**. Plaintiffs' falsity allegations all fail for the same basic reason: their entire case rests on the speculation of three low-level CWs who admit they had ***zero involvement*** in procurement. The Opposition tries to fix this fatal flaw with more speculation: Plaintiffs point to rising inventory levels, from which the CWs assume dwindling demand. But speculation can't cure speculation. The Court could stop here and dismiss on this basis alone. Even so, the undisputed data showed rising demand. It's not surprising the CWs didn't know that—none had access to consumer insight data, two didn't work in retail, and the third worked in just ***one*** of Target's ***1,926*** stores. For each alleged misstatement, the Complaint whirls back to rising inventory. But that's exactly what Target disclosed, so investors couldn't have been misled.

**Scienter**. Plaintiffs' scienter allegations fail for the same reasons and more. *First*, at a minimum, Plaintiffs must plead particularized facts establishing that Defendants *knew*

---

[1] Capitalized terms have the same meaning as in the Motion to Dismiss ("MTD") (Dkt.83). "Opp." refers to Plaintiffs' Opposition (Dkt.91). "Ex._" refers to exhibits to the declarations of Alexander J. Rodney (Dkt.84, 93). Unless noted, all emphases are added.

about the supposed falsity.  They can't because, again, they rely on the CWs, who admit they had had **zero** interaction with Defendants.  *Second*, Plaintiffs' theory is implausible. They claim Defendants intentionally sabotaged profits by deliberately purchasing unwanted inventory and lied to investors about it—despite knowing that (1) they were certain to get caught, (2) Target would be harmed; and (3) it would decimate their performance-based pay.  Even without wading into the reasons Plaintiffs fail on each specific statement, Plaintiffs' entire case fails for this reason alone.

The AC is meritless; it must be dismissed in full with prejudice.

# I.    PLAINTIFFS FAIL TO PLEAD FALSITY[2]

The PSLRA requires that Plaintiffs specify why *each* statement *in context* is false *when made*.  *See K-tel Int'l Sec. Litig.*, 300 F.3d 881, 889, 897 (8th Cir. 2002).  Plaintiffs ignore this requirement, and instead blend statements together, strip context, and conflate historic and forward-looking statements.  (Opp.13.)[3]  But the Court need not get bogged down in the statements because Plaintiffs regurgitate the same falsity allegations for each

---

[2] Plaintiffs argue that the Court cannot judicially notice the MTD exhibits.  (Opp.4, n.3.) But the PSLRA requires consideration of the whole Complaint—including documents incorporated by reference and subject to judicial notice.  *Tellabs v. Makor Issues & Rights*, 551 U.S. 308, 322 (2007).  Exhibits A-B and L-O are SEC filings incorporated into the Complaint and must be considered.  Exhibits C-J, P-S, V-II are judicially noticeable SEC filings/public records.  *See 3M Sec. Litig.*, 2021 WL 4482987, at *5, 18 (D. Minn. Sept. 30, 2021) (judicially noticing public records/Form-4s).  Exhibits K and U are judicially noticeable charts incorporating public information.  *See id.* at *18.  Exhibits JJ-LL are judicially noticeable Rule 10b5-1 sales plans.  (*Infra* §II.B.5.)  And Exhibit T—Walmart's historic stock price—reflects a judicially noticeable "market trend[]."  *See D.E.&J P'ship v. Conaway*, 284 F. Supp.2d 719, 749 n.26 (E.D. Mich. 2003), *aff'd*, 133 F. App'x 994 (6th Cir. 2005).

[3] MTD-Annex A organized the 20 alleged misstatements into six categories (Dkt.83-1). Annex B attached hereto adds cross-references to Plaintiffs' categories.

one—and those allegations fail as a matter of law for the same basic reasons. *See Steamfitters Loc.449 v. SleepNumber*, 2023 WL 4421688, at *7-11 (D. Minn. July 10, 2023) (dismissing complaint repeating same flawed "falsity" allegations for each alleged misstatement); *Kempen Int'l Funds v. Syneos Health*, 2024 WL 1805011, at *1-2 (S.D.N.Y. Apr. 25, 2024) (same).

### A.    Plaintiffs Cannot Plead Falsity of Business Model/Inventory Statements Through Speculation.

Plaintiffs argue statements purportedly about Target's business model/inventory were misleading because they didn't disclose Target was buying inventory without regard to demand. (Opp.14, 21-22.) But this fails out the gate because Plaintiffs don't plead a single fact about Target's procurement process. (MTD19-20.) Plaintiffs *reference* consumer-preference data (¶¶33-34,73; Opp.5), but they don't explain what it showed, how it factored into procurement, or how it was inconsistent with anything Target did. *See Navarre Sec. Litig.*, 299 F.3d 735, 744 (8th Cir. 2002) (no falsity where no explanation of contradictory data).

Instead, Plaintiffs try to bridge the gap through speculation. They rely exclusively on CWs who claim that—because inventory increased—Target must have intentionally purchased unwanted inventory. But Plaintiffs admit the CWs know nothing about purchasing, which was decided "from the top down" at headquarters—not by the CWs (who received no information about them). (Opp.2, 8.) Speculation fails to meet the PSLRA's heightened standard, meaning Plaintiffs' allegations must be rejected. *See Hutchinson Tech. Sec. Litig.*, 536 F.3d 952, 958-60 (8th Cir. 2008) (affirming dismissal

where falsity premised on speculation); *see also Cerner Sec. Litig.*, 425 F.3d 1079, 1083-84 (8th Cir. 2005) (rejecting falsity where plaintiff speculated sales drop equated to falling demand).

**For CW allegations to show falsity, CWs must have personal knowledge that *concealed* facts contradicted defendants' statements**. *See NVE Sec. Litig.*, 551 F. Supp.2d 871, 882 (D. Minn. 2007), *aff'd*, 527 F.3d 749 (8th Cir. 2008). Plaintiffs' cases prove the point. In each, CWs knew concealed facts that contradicted defendants' statements because they (i) had first-hand knowledge of the secret;[4] or (ii) communicated with upper-management about it.[5]

Here, by contrast, the only fact the CWs reference is rising inventory—which Plaintiffs admit Target disclosed. (¶141.) "[P]ublicly disclosed" facts cannot show falsity. *Tr. of Welfare and Pension Funds of Loc.46A v. Medtronic* ("*Medtronic-II*"), 2024 WL 1332262, at *15 (D. Minn. Mar. 28, 2024). Plaintiffs' supposedly "similar" cases illustrate this: they all involved particularized allegations that defendants **failed to disclose**

---

[4] Opp.17-19 (citing *QuantumScape Sec. Litig.*, 580 F. Supp.3d 714 (N.D.Cal. 2022) (researcher/developer knew concealed inaccuracies); *Glazer Cap. Mgmt. v. Forescout Techs.*, 63 F.4th 747 (9th Cir. 2023) (executive/sales supervisor CW knew concealed illusory sales); *Berson v. Applied Signal Tech.*, 527 F.3d 982 (9th Cir. 2008) (construction worker knew concealed order); *City of Sunrise Gen. Empls.' v. Fleetcor Techs.*, 2018 WL 4293143 (N.D. Ga. May 15, 2018) (telemarketers knew fraudulent telemarketing)).

[5] Opp.15-19 (citing *Nash Finch Sec. Litig.*, 502 F. Supp.2d 861 (D. Minn. 2007) (CWs discussed unattainable projections with upper-management); *BioMarin Pharms. Sec. Litig.*, 2022 WL 164299 (N.D.Cal. Jan. 6, 2022) (senior executive CW discussed private letter with executives); *Baron v. Hyrecar*, 2022 WL 17413562 (C.D.Cal. Dec. 5, 2022) (CWs met with upper-management about manipulated earnings); *Ferreira v. Funko*, 2021 WL 880400 (C.D.Cal. Feb. 25, 2021) (CW discussed concealed inventory issues with defendants)).

inventory/supply-chain issues. (Opp.22-23 (citing *Plumbers & Pipefitters v. Davis*, 2020 WL 1877821, at *10 (S.D.N.Y. Apr. 14, 2020) (undisclosed inventory increase); *San Antonio Fire and Police Pension Fund v. Dentsply Sirona*, 2024 WL 1898512, at *6 (S.D.N.Y. May 1, 2024) (undisclosed supply-chain issues); *Harman Int'l Indus. Sec. Litig.*, 791 F.3d 90, 104 (D.C. Cir. 2015) (undisclosed obsolete inventory).)

Plaintiffs strain to manufacture falsity through embellishment. They say CWs received emails from "headquarters" concerning excessive inventory. (Opp.53.) But ***only CW-3*** is alleged to have received emails—from unnamed "headquarters" employees, relating ***only to inventory at CW-3's store***. (¶67.) *Shoemaker v. Cardiovascular Sys.*, 300 F. Supp.3d 1046, 1055 (D. Minn. 2018) (rejecting extrapolation from single location).

Plaintiffs allege CW-3 "could plug in" store numbers in Greenfield and "observe inventory" (¶68; Opp.17-18), but they don't plead that CW-3 did so[6] or how CW-3 could divine consumer demand/preferences. *See Pound v. Stereotaxis*, 8 F. Supp.3d 1157, 1166 (E.D. Mo. 2014) (rejecting CW speculation where not involved in data-analysis). Nor could they—CW-3 had neither the tools nor skills to do so. Regardless, Plaintiffs' inventory allegations merely mimic Defendants' public statements—Target was purchasing earlier, increasing inventory, and using temporary storage—defeating falsity. (MTD15; Exs.M.7-8, L.13, GG.22); *Medtronic-II*, 2024 WL 1332262, at *15.[7]

---

[6] CW-3 merely says Greenfield showed inventory build-up ***in CW-3's*** store "in ***May 2021***"—i.e., ***before the Class Period***. (¶69.)

[7] Plaintiffs also allege that inventory levels exceeded an internal "policy" previously set at 80% of capacity. (¶¶7, 58, 142; Opp.6-7, 24, 60.) But Defendants disclosed inventory levels, changes in ordering practices, and the need for temporary storage, as Plaintiffs concede. (MTD6-7; ¶141.)

**In any event**, **Plaintiffs concede that audited sales data contradicts their speculation that HHGs weren't selling when the statements were made**. Plaintiffs don't dispute that HHGs sales increased in 2021 relative to 2020. (MTD5-6; Ex.K; Opp.20.) And that was over-and-above record HHGs sales in 2020, meaning Target <u>needed</u> more inventory to meet demand. (MTD6-7; *see also* ¶¶139,141.)[8] Plaintiffs quibble that sales grew at a lower rate in 2021 than in 2020 (Opp.20), but that still concedes sales growth in 2021. They likewise quibble that quarter-over-quarter *hardline* sales decreased (Opp.20), but ignore that year-over-year sales increased. And they ignore that in Q4-2021—the quarter before the markdowns-at-issue—hardline sales were Target's highest ever. (Ex.K.) These concessions are fatal: the undisputed data shows that Target bought goods customers wanted. *See Patterson Sec. Litig.*, 479 F. Supp.2d 1014, 1030 (D. Minn. 2007) (no falsity where sales data contradicted allegations); *Medtronic-II*, 2024 WL 1332262, at *14 (statements showing growth not misleading where accuracy undisputed).

Plaintiffs attempt to escape the data by claiming they only pled "bulky" HHGs were overstocked. (Opp.20.) But the Complaint focuses on **HHGs** generally. (*E.g.*, ¶¶97,102 ("over-ordered **hardlines** and **home furnishings**"), ¶43 ("**hardlines and home furnishing**…overstocked").) Plaintiffs cannot replead through their Opposition.[9] *Morgan*

---

[8] Plaintiffs say the sales data raises inappropriate "factual disputes," but there's no dispute about Target's sales *growth*. (Ex.K.) Plaintiffs cannot resist that conclusion by citing to *Schoenfeld v. U.S. Resort Mgmt.*, which is <u>not</u> a securities case. 2007 WL 2363500 (W.D. Mo. Aug. 16, 2007). (Opp.20.) The PSLRA requires the Court to consider all facts incorporated by the Complaint—including sales data. (*Supra* n.2).

[9] *Compare, e.g.*, Opp.6 (citing ¶¶48-50) ("overstock consist[ed] of bulkier [HHGs items]") *with* ¶¶48-50 ("overstocking on **hardlines and home furnishing items**").

*Distrib. v. Unidynamic*, 868 F.2d 992, 995 (8th Cir. 1989). And even the Opposition repeatedly refers to HHGs generally. (Opp.18, 22, 27.)

Regardless, Plaintiffs' attempt to reverse-engineer a "bulky" theory suffers from the same fatal flaw—they merely speculate that demand dropped because inventory rose. (Opp.20-21.) *See Hutchinson*, 536 F.3d at 958-60 (affirming dismissal where falsity premised on speculation).

### B.    Plaintiffs Cannot Plead Falsity of Markdown Statements by Hindsight.

Plaintiffs argue that markdown statements were misleading. (Opp.23-24.) But Plaintiffs don't argue any facts in historic statements regarding markdowns—i.e., the Historic Statements—were inaccurate. *See Medtronic Sec. Litig.* ("*Medtronic-I*"), 618 F. Supp.2d 1016, 1031 (D. Minn. 2009) ("accurate historical" statements inactionable), *aff'd*, 621 F.3d 800 (8th Cir. 2010).

Moreover, Plaintiffs concede the Markdown Projections are forward-looking. (Opp.28-30.) Thus, they are actionable only if Plaintiffs demonstrate that they weren't accompanied by meaningful cautionary language, and that Defendants had actual knowledge of falsity at the time they were made. (MTD20 (citing 15 U.S.C. §78u-5(c)).) They cannot.

***First***, the Markdown Projections were accompanied by the Demand Warnings, which provided meaningful cautionary language. (MTD37.) Plaintiffs don't dispute Defendants cautioned that consumer preferences could change quickly. (Opp.31, 34.) Instead, they say that this was "too general" because it didn't warn that Target might stop using consumer preferences. (Opp.31.) But companies aren't required to list all factors

that might affect results, so long as they warn of similar risks—which Target did.  *See*

*Yellen v. Hake*, 437 F. Supp.2d 941, 964 (S.D. Iowa 2006).

**Second**, Plaintiffs must allege that Defendants *knew* that the Markdown Projections

were misleading when made.  (MTD35-37.)  Plaintiffs assert that Defendants must have

known markdowns were needed (Opp.24), but the Eighth Circuit rejects conclusory fraud-

by-hindsight allegations (MTD11-12).  And courts routinely reject similar allegations

about missed projections during COVID.  *See City of Southfield Gen. Empls.' Ret. Sys. v.*

*Nat'l Vision*, 2024 WL 1376016, at *16 n.2 (N.D. Ga. Mar. 30, 2024) (collecting cases).

Plaintiffs' only response is that a demand shift in Q1-2022 is "implausible." (Opp.44 n.26.)

But claiming something is "implausible" doesn't plead actual knowledge.  *Pound*, 8 F.

Supp.3d at 1166 (rejecting actual knowledge by "inference").

Regardless, data shows HHGs sales decreased in Q1-2022 for the first time since

COVID began—as Target faced market-wide headwinds from the Ukrainian War and

inflation.  (MTD7-8; Exs.B.10, O.4.)  Indeed, Walmart disclosed plummeting demand then

too.  (MTD9, n.7; Ex.O.6.)[10]

Plaintiffs' cases involving supposedly "similar" markdown statements (Opp.25-26)

spotlight the Complaint's deficiencies—in each, particularized facts showed defendants

had actual knowledge of markdowns.  *See City of Providence v. Aeropostale*, 2013 WL

1197755, at *10-11 (S.D.N.Y. Mar. 25, 2013) (defendants knew markdowns required);

---

[10] Defendants inadvertently attached Walmart's May 2022 earnings release as Exhibit R. The quoted language appears in Walmart's May 2022 quarterly report, attached as Exhibit HH.21, which is judicially noticeable as an SEC filing showing market trends.  (*Supra* n.2.)

*Novak v. Kasaks*, 216 F.3d 300, 315 (2d Cir. 2000) (defendants knew inventory hadn't sold for years); *Institutional Invs. Grp. v. Avaya*, 564 F.3d 242, 263-64 (3d Cir. 2009) (defendants knew discounts already occurring); *Lefkoe v. Jos.A.Bank Clothiers*, 2007 WL 6890353, at *5-6 (D.Md. Sept. 10, 2007) (same).

## II.    PLAINTIFFS FAIL TO PLEAD SCIENTER

### A.    Plaintiffs Cannot Overcome the Competing Nonfraudulent Inference.

Plaintiffs' scienter theory is illogical.  Plaintiffs say Defendants lied to investors so they could purchase inventory they knew would harm Target and their performance-based pay.  Plaintiffs offer no reason why Defendants would harm themselves.  *See Target Sec. Litig.*, 275 F. Supp.3d 1063, 1075 (D. Minn. 2017) ("facially implausible" that leadership willfully/knowingly employed ill-advised strategy), *aff'd*, 955 F.3d 738 (8th Cir. 2020).

If non-fraudulent inferences are even slightly more compelling, dismissal is required.  *Tellabs*, 551 U.S. at 324.  Here, the non-fraudulent inference is far more compelling—as Target disclosed, it accelerated inventory purchases to meet demand and ended up with too much when demand abruptly slowed.  Plaintiffs' allegations of rising inventory are perfectly consistent with this.  Plaintiffs try to escape this by arguing it's implausible demand suddenly shifted in Q1-2022 (Opp.60), but COVID caused many unexpected market shifts at that time.  Besides, undisputed sales data shows the shift was indeed sudden (*supra* §I.A).

**B.      Plaintiffs' Allegations Don't Support Scienter.**

Regardless, none of Plaintiffs' arguments support a "strong inference" of scienter.

   1.   <u>Purported "Admissions" Don't Support Scienter.</u>

Plaintiffs begin with fraud-by-hindsight. They argue that Defendants "had to be aware" that rising inventory levels would require markdowns based on Target's later statement disclosing markdowns. This fails.

For starters, Plaintiffs don't explain how their allegations support scienter for the business model or inventory statements. *Horizon Asset Mgmt. v. H&R Block*, 580 F.3d 755, 761 (8th Cir. 2009) (strong inference required for *each* alleged misrepresentation). And Plaintiffs' argument for the Markdown Projections is—again—pure speculation. They assert—with zero support—that markdowns are "typically" taken on inventory "unsold for a significant period of time," so Defendants must have known markdowns were necessary at some unspecified time before March 2022. (Opp.41.) This fails the PSLRA's particularity requirement. *See Ceridian Corp. Sec. Litig.*, 542 F.3d 240, 248 (8th Cir. 2008) (requiring "particular facts" demonstrating defendants' knowledge *when statements made*). Plaintiffs' cases illustrate their shortcomings: each involves particularized allegations that defendants contemporaneously knew facts contradicting their markdown disclosures. *City of Pontiac Gen. Empls. Ret. Sys. v. Dell*, 2016 WL 6075540, at *4 (W.D. Tex. Sept. 16, 2016); *Novak*, 216 F.3d at 311-12. (Opp.41.) Instead of alleging contradictory facts, Plaintiffs circle-back to the same refrain that inventory was increasing. Again, that was disclosed, negating scienter. *Horizon*, 580 F.3d at 764-65.

Nor does Target's May 2022 statement that it used "temporary storage" evidence scienter—Defendants publicly disclosed months earlier that they were "investing in flexible fixtures to provide temporary storage." (MTD6-7; Exs.G.7, M.8.) Plaintiffs have no response. (Opp.40, 42.)

Plaintiffs also allege that Cornell admitted, post-hoc, that Target was "chasing [consumer] demand" during the Pandemic and that heightened demand couldn't "go on forever." (Opp.42.) But this underscores that Target *was* anticipating consumer preferences, while appreciating they might change and impact financial results, as Target told investors. (Ex.B.8 ("COVID-19…contributed to our increased sales…[i]f we are unable to effectively adapt if or when guests increase spending on other categories, it could…adversely affect our results.").)[11]

2.  Purported Access to Unspecified Data Doesn't Support Scienter.

Next, Plaintiffs try to manufacture scienter by pointing to the Greenfield and Apollo inventory-management systems. (Opp.44.) This fails for several reasons.

***First***, Plaintiffs speculate that Mulligan and Hennington must have used Apollo and Greenfield to "work[] through" inventory (Opp.46) and claim the CWs "confirmed" Defendants had access to them (Opp.45-46). But that's not supported by the pleadings. CW-1 said nothing about inventory systems; CW-2 and CW-3 spoke of one database each,

---

[11] Unlike Cornell's "admission"—which is *consistent with* Target's statements—Plaintiffs' cases involve contradictory statements. *City of Birmingham Firemen's and Policemen's Supp. Pens. v. Ryanair,* 2020 WL 2834857, at *3-4 (S.D.N.Y. June 1, 2020) (defendant admitted he "long anticipated" unionization, yet told investors the opposite); *St. Jude*, 836 F. Supp.2d at 899 (defendants issued rosy projections, while concealing material workforce reduction).

but neither said anything about Defendants accessing them.  Nor do Plaintiffs claim that any CW spoke to any Defendant, overheard any admissions, or had any other basis to know what databases Defendants accessed.  *Medtronic-II*, 2024 WL 1332262, at *30-31 (rejecting CWs' speculation about defendants' use of databases as supporting scienter); *Pound*, 8 F. Supp.3d at 1166 (same).

**Second**, Plaintiffs are conspicuously silent on *how* the databases contradicted Defendants' statements.  *Medtronic-I*, 618 F. Supp.2d at 1034 (plaintiffs failed to allege how data "would convey" falsity of statements); *Kushner v. Beverly Enters.*, 317 F.3d 820, 829 (8th Cir. 2003) (no allegation that defendants' "synthesized" data and reached contrary conclusions).  Plaintiffs' lengthy string-cite (Opp.48-49) highlights this deficiency—the cases all involved allegations showing that (1) ***defendants monitored*** data ***inconsistent with*** alleged misstatements;[12] (2) CWs themselves ***spoke to defendants*** or had ***personal knowledge*** of the ***secret defendants knew***;[13] or (3) defendants had ***actual knowledge*** of a ***secret already occurring*** at the time of alleged misstatements.[14]  Plaintiffs don't allege any such contradictory facts.  Instead, they repeat the same refrain—data would have shown that inventory was rising.  But Target disclosed that was happening (MTD5-6), negating

---

[12] *See  CarLotz  Sec.  Litig.*, 2024 WL 1348749, at *15-16 (S.D.N.Y. Mar. 29, 2024); *Dentsply Sirona Sec. Litig.*, 665 F. Supp.3d 255, 291 (E.D.N.Y. 2023); *Citiline v. iStar Fin.*, 701 F. Supp.2d 506, 516 (S.D.N.Y. 2010).

[13] *See CenturyLink*, 403 F. Supp.3d at 730-31; *Galestan v. Onemain*, 348 F. Supp.3d 282, 300 (S.D.N.Y. 2018); *Turocy v. El Pollo Loco*, 2017 WL 3328543, at *16-17 (C.D.Cal. Aug. 4, 2017).

[14] *See Salix Pharms.*, 2016 WL 1629341, at *14 (S.D.N.Y. Apr. 22, 2016); *IBEW Local 98 Pension Fund v. Best Buy*, 958 F. Supp.2d 1065, 1077 (D. Minn. 2013); *St. Jude*, 836 F. Supp.2d at 899; *Lefkoe*, 2007 WL 6890353, at *6.

12

any scienter inference.  *See 3M Sec. Litig.*, 2021 WL 4482987, at *19 (D. Minn. Sept. 30, 2021) (no scienter where "statements do not contradict" defendants' internal information).

> 3.  <u>Purported Site Visits Don't Support Scienter.</u>

Plaintiffs concede that their site visit allegations lack particularity—they claim Cornell visited sometime during the Class Period, but cannot specify when.  (Opp.51.)  Plaintiffs admit they have no idea what Cornell did during that alleged visit, but speculate that he must have seen "stash" aisles.  (Opp.52 & n.35.)  Regardless, Plaintiffs' allegations fail because they don't establish Defendants knew inventory was unsellable.  That Target had warehouses at capacity proves nothing; it only confirms that Target stocked up to meet anticipated demand (as disclosed).  And two other alleged site visits by non-defendants cannot impute Defendants with knowledge, let alone of companywide issues.  *See Medtronic-II*, 2024 WL 1332262, at *30-31.

> 4.  <u>Core Operations Isn't Viable and Doesn't Support Scienter.</u>

Plaintiffs concede "core operations" has never been recognized by the Eighth Circuit.  (Opp.54.)  But it doesn't salvage scienter anyway.  Plaintiffs must point to core-operations facts that *contradict* Defendants' statements.  (MTD46.)  Plaintiffs argue that, because inventory management is a core aspect of Target's business, Defendants must have known of rising inventory.  (Opp.55.)  Even if true, such knowledge is ***consistent*** with their statements, which defeats scienter.  *See 3M*, 2021 WL 4482987, at *21; *Biogen Sec. Litig.*, 857 F.3d 34, 41 (1st Cir. 2017) (affirming dismissal where "core operations allegations…consistent with" statements).

Moreover, the core operations doctrine imputes senior executives only with knowledge of (1) company details executives admitted to reviewing; or (2) problems of such import that it would be "absurd" to disclaim awareness. *Zucco Partners v. Digimarc*, 552 F.3d 981, 1000 (9th Cir. 2009). Here, Plaintiffs' newfangled "bulky" HHGs theory puts the nail in the coffin. (Opp.12.) None of the Defendants stated that they reviewed ad-hoc sub-categories of "bulky" inventory. And it's implausible to suggest that Defendants must have been aware of facts like the number of TVs Target had among the countless products sold companywide—or that such facts would have communicated a problem, given Defendants' disclosures about stocking up.

5.    <u>Trades Underscore Implausibility of Plaintiff's Theory.</u>

**10b5-1 Plans.** Plaintiffs cannot dispute that Form-4s show every alleged stock sale was made under a Rule 10b5-1 plan, which underscores that the sales were "not suspicious." *Elam v. Neidorff*, 544 F.3d 921, 928 (8th Cir. 2008); (MTD47.) Nor do Plaintiffs dispute that Cornell's and Hennington's plans were in place before the alleged Class Period—which is all but dispositive. (MTD47.)

Plaintiffs insist it's improper to consider the 10b5-1 plans because they weren't attached. (Opp.58.) But each plan is described on the Form-4s—which Plaintiffs themselves rely on. (¶¶146-149). And courts routinely rely on similar SEC filings in dismissing similar allegations. *See, e.g.*, *Medtronic-II*, 2024 WL 1332262, at *34 n.38. Regardless, the trading plans are attached as Exhibits JJ-LL, which are judicially noticeable. *See Shoemaker v. Cardiovascular Sys.*, 2017 WL 1180444, at *7 (D. Minn. Mar. 29, 2017).

Plaintiffs also claim that 10b5-1 plans are not a "cognizable defense" at the pleading stage. But the Eighth Circuit disagrees. *Elam*, 544 F.3d at 928 (considering 10b5-1 plans in affirming 12(b)(6) dismissal).[15]

**Prior Trading.** Regardless, Plaintiffs concede that trades can only show scienter when "dramatically out of line with prior trading practices" *and* timed in a "calculated" way. (Opp.56 (quoting *Nash*, 502 F. Supp. 2d at 882)); *Navarre*, 299 F.3d at 747. Neither applies here.

Plaintiffs don't—and can't—claim that Cornell's or Fiddelke's trades were larger than before the Class Period, which is fatal. *See K-tel*, 300 F.3d at 896 (no scienter where plaintiff failed to allege prior sales history). Plaintiffs say Hennington sold the "largest portion of her holdings" during the Class Period; but only by 1.4%. (MTD48; Ex.LL.) That's a far cry from Plaintiffs' case, *Nash*, where defendants sold *six times* more shares— *without* a 10b5-1 plan—shortly before disclosing the truth. 502 F. Supp.2d at 882.

Nor was there anything "calculated" about the timing (Opp.57); Defendants have historically sold around disclosures (Exs.JJ-LL). Besides, courts have found that even trades within days of disclosures don't establish motive. *Medtronic-I*, 618 F. Supp.2d at 1038.

---

[15] *Mart v. Tactile* doesn't say otherwise. 595 F. Supp.3d 788, 817 (D. Minn. 2022). The court held that a trading plan is not a complete defense if (1) it is adopted ***during*** the ***class period***; *and* (2) allegations demonstrate its purpose was to benefit from stock-price inflation. Plaintiffs don't even try to make that showing here. Plaintiffs' out-of-circuit cases are likewise off-base. *See Cardinal Health Sec. Litig.*, 426 F. Supp.2d 688, 734 (S.D. Ohio 2006) (plan instituted *after* sales); *Evanston Police Pension Fund v. McKesson*, 411 F. Supp.3d 580, 605 n.3 (N.D.Cal. 2019) ("*unusual* 10b5-1 plan *modifications*").

**Increased Stock Ownership.**  Plaintiffs concede that Defendants' stock ownership increased during the Class Period.  *See Cornelia I. Crowell GST Trust v. Possis Med.*, 519 F.3d 778, 783 (8th Cir. 2008) (no motive where holdings increased).  Plaintiffs quibble that Defendants accumulated shares as part of their pay, but Plaintiffs' own case holds that "hardly suggests that [insiders] sought to dump their shares at an inflated price."  *Tyson Sec. Litig.*, 275 F. Supp.3d 970, 1002 (W.D. Ark. 2017).[16]  In fact, Defendants' performance-based pay highlights the implausibility of Plaintiffs' theory—Defendants had no reason to hurt Target's bottom-line and their own pocketbooks.

## III.  THE STATEMENTS ARE INACTIONABLE FOR INDEPENDENT REASONS.

### A.  The Demand Warnings Are Inactionable.

Plaintiffs argue the Demand Warnings were misleading/actionable because the warned-of risk was already occurring as Target supposedly stopped using consumer insights.  (Opp.31-33.)  But (1) Plaintiffs fail to plead facts showing that ever happened (*supra* §I.A); and (2) the warned-of risk wasn't failing to use consumer insights, but that changing consumer demand/preferences may lead to material markdowns.  (MTD21-24.)

Relying on CW-3, Plaintiffs argue that risk materialized because Target was already marking down HHGs.[17]  (Opp.33.)  But CW-3 alleged only generic markdowns, not HHGs markdowns.  (¶72.)  And, again, the warned-of risk was *material* markdowns, not just

---

[16] Unlike *Freudenberg v. E*Trade*, Plaintiffs don't allege that Defendants believed the fraud could be hidden and that the shares would remain inflated indefinitely.  712 F. Supp.2d 171, 201 (S.D.N.Y. 2010).

[17] Plaintiffs also argue that Target was losing sales then too (Opp.33), but undisputed sales data debunks that.  (*Supra* §I.A.)

markdowns, which are commonplace. (MTD24.) The law is clear—it must be the *warned-of* risk that materialized. (MTD22.)

In any event, Plaintiffs are required—but fail—to allege particularized facts demonstrating Defendants had actual knowledge that the warned-of risk had materialized. (MTD20-24; *supra* §I.A.) Plaintiffs' cases prove the point. Each found risk warnings actionable only where the defendants ***knew*** the warned-of risk had materialized. (Opp.15, 33-34 (citing *Facebook Sec. Litig.*, 87 F.4th 934, 949-50 (9th Cir. 2023) (data warning actionable because Facebook knew of data breach); *Siracusano v. Matrixx Initiatives*, 585 F.3d 1167, 1172 (9th Cir. 2009) (lawsuit warning actionable because defendants knew company had been sued); *Ferreira v. Funko*, 2021 WL 880400, at *16-19 (C.D.Cal. Feb. 25, 2021) (inventory warnings misleading, **but subsequently holding** (2021 WL 8820650, at *15-20 (Oct. 22, 2021)), they were **inactionable because no actual knowledge**)).)

## B. The Insight/Flow/Investment Statements Are Immaterial Puffery.

Plaintiffs argue that statements in SEC filings and in response to analysts are necessarily material. (Opp.35 (citing *Nash Finch Sec. Litig.,* 502 F. Supp.2d 861 (D. Minn. 2007); *St. Jude Medical Sec. Litig.*, 836 F. Supp.2d 878 (D. Minn. 2011)).) But the Eighth Circuit holds the opposite. *See Stratasys S'holder Sec. Litig.*, 864 F.3d 879, 883 (8th Cir. 2017).

Plaintiffs also claim that optimistic statements including numbers are inherently material (Opp.35), referring to Fiddelke's statements that he "fe[lt] really good" that inventory levels were "$2 billion north of last year" (¶86) and "up 30%" (¶105). But Plaintiffs don't plead the numbers are false: to the contrary, they allege over-and-over

again that inventory was rising. *See Stratasys*, 864 F.3d at 882. And their own case confirms that future-oriented optimistic statements referencing facts can be puffery. *See Harman*, 791 F.3d at 110.

Finally, Plaintiffs list cases finding statements materially false, but only because—unlike here—they exclusively described historical facts or defendants knew underlying facts were verifiably false. (Opp.35-39 (citing *Harman*, 791 F.3d at 109 ("historical fact"); *CenturyLink Sales Practices & Sec. Litig.*, 403 F. Supp.3d 712, 727 (D. Minn. 2019) (defendants knew underlying facts false); *accord Aeropostale*, 2013 WL 1197755, at *10-11; *Beaver Cnty. Emps. Ret. Fund v. Tile Shop*, 94 F. Supp.3d 1035, 1049 (D. Minn. 2015); *U.S. Bank v. PHL Variable*, 2013 WL 791462, at *6 (S.D.N.Y. Mar 5. 2013); *Novak*, 216 F.3d at 315).) And *Waswick v. Torrid* found a strikingly similar statement was puffery. 2023 WL 9197563, at *4 (C.D.Cal. Dec. 1, 2023) ("data-driven approach" allowed for "effective" inventory management).

### C.     Forward-Looking Statements Can Include Present-Tense Verbs.

Plaintiffs assert various statements aren't forward-looking because they include present-tense verbs or reference current inventory levels. (Opp.28-30.) But each merely identified assumptions underlying *future* plans. (MTD26, 30, 32-33, 35.) Courts routinely hold plans/objectives for "future operations" and the "assumptions underlying" them are forward-looking, regardless of whether they contain present-tense verbs. *See Julianello*, 791 F.3d at 921. The same is true for risk warnings. (MTD20.)

**D.     Target's Opinion Statements Are Inactionable.**

Plaintiffs argue that Defendants failed to call out specific opinion "portions" (Opp.26), but cite no authority requiring this, and ignore the opinions Defendants identified (MTD28-29).  Next, Plaintiffs say the opinions at issue contain facts (Opp.28, n.14), but don't claim those facts are false (MTD28).  Finally, Plaintiffs assert that Defendants didn't believe their opinions (Opp.28), but fail to plead any supporting facts.

## CONCLUSION

Defendants respectfully request the Court dismiss the Complaint with prejudice.

19

Date:  June 14, 2024

Respectfully submitted,

/s/ Sandra C. Goldstein

Jeffrey P. Justman
MN Bar No. 0390413
FAEGRE DRINKER BIDDLE &
REATH LLP
2200 Wells Fargo Center
90 South 7th Street
Minneapolis, MN 55402
Telephone: (612) 766-7000
jeff.justman@faegredrinker.com

Sandra Grannum (*pro hac vice*)
FAEGRE DRINKER BIDDLE &
REATH LLP
600 Campus Drive
Florham Park, NJ 07932
Telephone: (973) 549-7000
sandra.grannum@faegredrinker.com

*Attorneys for Defendants*

Sandra C. Goldstein, P.C. (*pro hac vice*)
Alexander J. Rodney (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4779
sandra.goldstein@kirkland.com
alexander.rodney@kirkland.com