Exhibit JJ

**<u>Exhibit JJ</u>**

**Summary Chart of Brian C. Cornell's Sales Pursuant to Rule 10b5-1 Plans**

(May 2020 - March 2022)

| Date of Sale | Shares Sold | Shares Before Sale | % Holdings Sold |
|---|---|---|---|
| **Sales Pursuant to Plan Entered November 25, 2019** | | | |
| **May 11, 2020** | **110,000** | **318,502** | **34.54%** |
| **Sales Pursuant to Plans Entered June 19 & 24, 2020** | | | |
| **Aug. 20, 2020** | 1,400 | | |
| | 7,400 | | |
| | 11,801 | | |
| | 26,229 | | |
| | 53,170 | | |
| | 191,820 | | |
| | **291,820** | **514,615** | **56.71%** |
| **Sales Pursuant to Plan Entered November 19, 2020** | | | |
| **Mar. 3, 2021** | **93,364** | **223,829** | **41.71%** |
| **Sales Pursuant to Plan Entered June 10, 2021** | | | |
| **Sept. 2, 2021** | 9,236 | | |
| | 15,764 | | |
| | **25,000** | **220,563** | **11.33%** |

| Date of Sale | Shares Sold | Shares Before Sale | % Holdings Sold |
|---|---|---|---|
| **Sales Pursuant to Plan Entered September 3, 2021** | | | |
| Dec. 2, 2021 | 1,500 | | |
| | 4,066 | | |
| | 5,900 | | |
| | 9,234 | | |
| | 9,300 | | |
| | **30,000** | **219,998** | **13.64%** |
| Mar. 16, 2022 | 100 | | |
| | 1,500 | | |
| | 1,600 | | |
| | 3,609 | | |
| | 5,600 | | |
| | 5,891 | | |
| | 11,700 | | |
| | **30,000** | **209,064** | **14.35%** |

SEC Form 4

**FORM 4**

Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

**STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP**

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934
or Section 30(h) of the Investment Company Act of 1940

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0287 |
| Estimated average burden | |
| hours per response: | 0.5 |

| 1. Name and Address of Reporting Person[*] | 2. Issuer Name **and** Ticker or Trading Symbol | 5. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|
| Cornell Brian C | TARGET CORP [ TGT ] | X Director    10% Owner |
| (Last)    (First)    (Middle) | | X Officer (give title below)    Other (specify below) |
| 1000 NICOLLET MALL | 3. Date of Earliest Transaction (Month/Day/Year) 05/11/2020 | Executive Officer |
| (Street) | 4. If Amendment, Date of Original Filed (Month/Day/Year) | 6. Individual or Joint/Group Filing (Check Applicable Line) |
| MINNEAPOLIS MN    55403 | | X Form filed by One Reporting Person |
| (City)    (State)    (Zip) | | Form filed by More than One Reporting Person |

**Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned**

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 05/11/2020 | | S[1] | | 110,000 | D | $120[2] | 208,502 | D | |
| Common Stock | 04/09/2020 | | G | V | 7,900 | D | $0.0000 | 194,994 | I | By Trust |
| Common Stock | | | | | | | | 420.7326[3] | I | By 401(k) Plan |

**Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned**
**(e.g., puts, calls, warrants, options, convertible securities)**

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Securities Underlying Derivative Security (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |

**Explanation of Responses:**

1. The reported transaction was effected pursuant to a Rule 10b5-1 trading plan previously entered into by the reporting person on November 25, 2019.

2. Price is the volume weighted average selling price of all sales by the reporting person on the transaction date within a one dollar range. Actual prices ranged from $120.00 to $120.01. The reporting person hereby undertakes to provide upon request of the Commission staff, the issuer, or a security holder of the issuer, full information regarding the number of shares sold at each separate price.

3. Shares held in the Target Corporation 401(k) Plan based on the plan statement as of March 31, 2020.

Andrew J. Neuharth, Attorney-In-Fact            05/13/2020

** Signature of Reporting Person            Date

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, *see* Instruction 4 (b)(v).

** Intentional misstatements or omissions of facts constitute Federal Criminal Violations *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.**

SEC Form 4

**FORM 4**

| | |
|---|---|
| ☐ Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b). | |

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

**STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP**

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934
or Section 30(h) of the Investment Company Act of 1940

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0287 |
| Estimated average burden hours per response: | 0.5 |

| 1. Name and Address of Reporting Person[*] | 2. Issuer Name **and** Ticker or Trading Symbol | 5. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|
| Cornell Brian C | TARGET CORP [ TGT ] | X Director    10% Owner<br>X Officer (give title below)    Other (specify below)<br>**Executive Officer** |
| (Last)    (First)    (Middle)<br>1000 NICOLLET MALL | 3. Date of Earliest Transaction (Month/Day/Year)<br>08/20/2020 | |
| (Street)<br>MINNEAPOLIS   MN        55403 | 4. If Amendment, Date of Original Filed (Month/Day/Year) | 6. Individual or Joint/Group Filing (Check Applicable Line)<br>X Form filed by One Reporting Person<br>Form filed by More than One Reporting Person |
| (City)    (State)    (Zip) | | |

**Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned**

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 05/18/2020 | | G[(1)] | V | 89,091 | D | $0.0000 | 119,411[(2)] | D | |
| Common Stock | 06/26/2020 | | G[(3)] | V | 100,000 | A | $0.0000 | 220,064 | D | |
| Common Stock | 08/20/2020 | | M[(4)] | | 294,551 | A | $55.6 | 514,615 | D | |
| Common Stock | 08/20/2020 | | S[(5)] | | 1,400 | D | $155.879[(6)] | 513,215 | D | |
| Common Stock | 08/20/2020 | | S[(5)] | | 7,400 | D | $155.1437[(7)] | 505,815 | D | |
| Common Stock | 08/20/2020 | | S[(5)] | | 11,801 | D | $154.1944[(8)] | 494,014 | D | |
| Common Stock | 08/20/2020 | | S[(5)] | | 26,229 | D | $153.2283[(9)] | 467,785 | D | |
| Common Stock | 08/20/2020 | | S[(5)] | | 53,170 | D | $152.4609[(10)] | 414,615 | D | |
| Common Stock | 08/20/2020 | | F[(4)] | | 191,820 | D | $154.93 | 222,795 | D | |
| Common Stock | 05/18/2020 | | G[(1)] | V | 89,091 | A | $0.0000 | 284,085 | I | By Trust |
| Common Stock | 05/27/2020 | | G | V | 1,630 | D | $0.0000 | 282,455 | I | By Trust |
| Common Stock | 06/26/2020 | | G[(3)] | V | 100,000 | D | $0.0000 | 182,455 | I | By Trust |
| Common Stock | | | | | | | | 422.7069[(11)] | I | By 401(k) Plan |

**Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned**
**(e.g., puts, calls, warrants, options, convertible securities)**

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Securities Underlying Derivative Security (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |
| Stock Option[(12)] | $55.6 | 08/20/2020 | | M | | | 294,551 | 04/17/2020[(12)] | 04/17/2024[(12)] | Common Stock | 294,551 | $0.0000 | 0.0000 | D | |

**Explanation of Responses:**

1. Reflects the gift of shares to a revocable living trust, of which the reporting person and his spouse are trustees, for the benefit of the reporting person, his spouse and their children.

2. Includes dividend equivalents paid on performance-based restricted stock units since the date of the reporting person's last filing through the date of the reported transaction that have been reinvested in additional performance-based restricted stock units.

3. Reflects the transfer of shares to the reporting person from a revocable living trust, of which the reporting person and his spouse are trustees, for the benefit of the reporting person, his spouse and their children.

4. The shares received upon exercise of the price-vested stock options, net of exercise costs and taxes, are subject to a one-year post-exercise holding period. The reported transaction was effected pursuant to a Rule 10b5-1 trading plan previously entered into by the reporting person on June 24, 2020.

5. The reported transaction was effected pursuant to a Rule 10b5-1 trading plan previously entered into by the reporting person on June 19, 2020.

6. Price is the volume weighted average selling price of all sales by the reporting person on the transaction date within a one dollar range. Actual prices ranged from $155.80 to $156.07. The reporting person hereby undertakes to provide upon request of the Commission staff, the issuer, or a security holder of the issuer, full information regarding the number of shares sold at each separate price.

7. Price is the volume weighted average selling price of all sales by the reporting person on the transaction date within a one dollar range. Actual prices ranged from $154.80 to $155.73. The reporting person hereby undertakes to provide upon request of the Commission staff, the issuer, or a security holder of the issuer, full information regarding the number of shares sold at each separate price.

8. Price is the volume weighted average selling price of all sales by the reporting person on the transaction date within a one dollar range. Actual prices ranged from $153.80 to $154.79. The reporting person hereby undertakes to provide upon request of the Commission staff, the issuer, or a security holder of the issuer, full information regarding the number of shares sold at each separate price.

9. Price is the volume weighted average selling price of all sales by the reporting person on the transaction date within a one dollar range. Actual prices ranged from $152.79 to $153.78. The reporting person hereby undertakes to provide upon request of the Commission staff, the issuer, or a security holder of the issuer, full information regarding the number of shares sold at each separate price.

10. Price is the volume weighted average selling price of all sales by the reporting person on the transaction date within a one dollar range. Actual prices ranged from $151.79 to $152.78. The reporting person hereby undertakes to provide upon request of the Commission staff, the issuer, or a security holder of the issuer, full information regarding the number of shares sold at each separate price.

11. Shares held in the Target Corporation 401(k) Plan based on the plan statement as of June 30, 2020.

12. An award of price-vested stock options under the Amended and Restated Target Corporation 2011 Long-Term Incentive Plan, previously reported by the reporting person on May 24, 2017. This report corrects the "Date Exercisable" and "Expiration Date" which were inadvertently listed as 5/22/2020 and 5/22/2024, respectively, in that previous report.

| Andrew J. Neuharth, Attorney-In-Fact | 08/21/2020 |
|---|---|
| ** Signature of Reporting Person | Date |

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, *see* Instruction 4 (b)(v).

** Intentional misstatements or omissions of facts constitute Federal Criminal Violations *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.**

SEC Form 4

**FORM 4**

Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

**STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP**

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934
or Section 30(h) of the Investment Company Act of 1940

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0287 |
| Estimated average burden hours per response: | 0.5 |

| 1. Name and Address of Reporting Person[*] | 2. Issuer Name **and** Ticker or Trading Symbol | 5. Relationship of Reporting Person(s) to Issuer (Check all applicable) | |
|---|---|---|---|
| Cornell Brian C | TARGET CORP [ TGT ] | X Director | 10% Owner |
| (Last)      (First)      (Middle) | | X Officer (give title below) | Other (specify below) |
| 1000 NICOLLET MALL | 3. Date of Earliest Transaction (Month/Day/Year) 03/03/2021 | Executive Officer | |
| (Street) MINNEAPOLIS MN          55403 | 4. If Amendment, Date of Original Filed (Month/Day/Year) | 6. Individual or Joint/Group Filing (Check Applicable Line) | |
| (City)      (State)      (Zip) | | X Form filed by One Reporting Person | |
| | | Form filed by More than One Reporting Person | |

**Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned**

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 03/03/2021 | | S[(1)] | | 93,364 | D | $174.2295[(2)] | 130,465[(3)] | D | |
| Common Stock | | | | | | | | 425.9337[(4)] | I | By 401(k) Plan |
| Common Stock | | | | | | | | 182,455 | I | By Trust |

**Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned**
**(e.g., puts, calls, warrants, options, convertible securities)**

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Securities Underlying Derivative Security (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |

**Explanation of Responses:**

1. The reported transaction was executed automatically under a Rule 10b5-1 trading plan entered into by the reporting person on November 19, 2020, with no further involvement by the reporting person after November 19, 2020.

2. Price is the volume weighted average selling price of all sales by the reporting person on the transaction date within a one dollar range. Actual prices ranged from $172.67 to $176.73. The reporting person hereby undertakes to provide upon request of the Commission staff, the issuer, or a security holder of the issuer, full information regarding the number of shares sold at each separate price.

3. Includes dividend equivalents paid on performance-based restricted stock units since the date of the reporting person's last filing through the date of the reported transaction that have been reinvested in additional performance-based restricted stock units.

4. Shares held in the Target Corporation 401(k) Plan based on the plan statement as of December 31, 2020.

**Remarks:**

cornellpoa.txt

David L. Donlin, Attorney-In-Fact          03/05/2021

** Signature of Reporting Person          Date

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, *see* Instruction 4 (b)(v).

** Intentional misstatements or omissions of facts constitute Federal Criminal Violations *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.**

SEC Form 4

**FORM 4**

Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

**STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP**

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934
or Section 30(h) of the Investment Company Act of 1940

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0287 |
| Estimated average burden | |
| hours per response: | 0.5 |

| 1. Name and Address of Reporting Person[*] | 2. Issuer Name **and** Ticker or Trading Symbol | 5. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|

1. Name and Address of Reporting Person[*]

**Cornell Brian C**

(Last)        (First)        (Middle)

**1000 NICOLLET MALL**

(Street)

**MINNEAPOLIS MN        55403**

(City)        (State)        (Zip)

2. Issuer Name **and** Ticker or Trading Symbol

**TARGET CORP** [ TGT ]

3. Date of Earliest Transaction (Month/Day/Year)
09/02/2021

4. If Amendment, Date of Original Filed (Month/Day/Year)

5. Relationship of Reporting Person(s) to Issuer (Check all applicable)

| | | | |
|---|---|---|---|
| X | Director | | 10% Owner |
| X | Officer (give title below) | | Other (specify below) |

**Executive Officer**

6. Individual or Joint/Group Filing (Check Applicable Line)

X  Form filed by One Reporting Person

   Form filed by More than One Reporting Person

## Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 05/13/2021 | | G[(1)] | V | 124,788 | D | $0.0000 | 195,271 | D | |
| Common Stock | 06/18/2021 | | G[(2)] | V | 25,000 | A | $0.0000 | 220,563[(3)] | D | |
| Common Stock | 09/02/2021 | | S[(4)] | | 9,236 | D | $246.4106 [(5)] | 211,327 | D | |
| Common Stock | 09/02/2021 | | S[(4)] | | 15,764 | D | $245.7256[(6)] | 195,563 | D | |
| Common Stock | 05/13/2021 | | G[(1)] | V | 124,788 | A | $0.0000 | 213,879 | I | By Trust |
| Common Stock | 06/18/2021 | | G[(2)] | V | 25,000 | D | $0.0000 | 188,879 | I | By Trust |
| Common Stock | | | | | | | | 428.4987[(7)] | I | By 401(k) Plan |

## Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
### (e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Securities Underlying Derivative Security (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |

**Explanation of Responses:**

1. Reflects the gift of shares to a revocable living trust, of which the reporting person and his spouse are trustees, and in which the reporting person has a beneficial interest.

2. Reflects the transfer of shares to the reporting person from a revocable living trust, of which the reporting person and his spouse are trustees, and in which the reporting person has a beneficial interest.

3. Includes dividend equivalents paid on performance-based restricted stock units since the date of the reporting person's last filing through the date of the reported transaction that have been reinvested in additional performance-based restricted stock units.

4. The reported transaction was effected pursuant to a Rule 10b5-1 trading plan previously entered into by the reporting person on June 10, 2021.

5. Price is the volume weighted average selling price of all sales by the reporting person on the transaction date within a one dollar range. Actual prices ranged from $246.21 to $246.82. The reporting person hereby undertakes to provide upon request of the Commission staff, the issuer, or a security holder of the issuer, full information regarding the number of shares sold at each separate price.

6. Price is the volume weighted average selling price of all sales by the reporting person on the transaction date within a one dollar range. Actual prices ranged from $245.21 to $246.20. The reporting person hereby undertakes to provide upon request of the Commission staff, the issuer, or a security holder of the issuer, full information regarding the number of shares sold at each separate price.

7. Shares held in the Target Corporation 401(k) Plan based on the plan statement as of June 30, 2021.

|  |  |
|---|---|
| <u>David L. Donlin, Attorney-In-Fact</u> | <u>09/03/2021</u> |
| ** Signature of Reporting Person | Date |

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

\* If the form is filed by more than one reporting person, *see* Instruction 4 (b)(v).

\*\* Intentional misstatements or omissions of facts constitute Federal Criminal Violations *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.**

**FORM 4**

# UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

| OMB APPROVAL |
| --- |
| OMB Number: 3235-0287 |
| Estimated average burden hours per response: 0.5 |

☐ Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934
or Section 30(h) of the Investment Company Act of 1940

| 1. Name and Address of Reporting Person[*]  **Cornell Brian C**  (Last)  (First)  (Middle)  **1000 NICOLLET MALL**  (Street)  **MINNEAPOLIS  MN    55403**  (City)  (State)  (Zip) | 2. Issuer Name **and** Ticker or Trading Symbol  **TARGET CORP** [ **TGT** ]  3. Date of Earliest Transaction (Month/Day/Year)  **12/02/2021**  4. If Amendment, Date of Original Filed (Month/Day/Year) | 5. Relationship of Reporting Person(s) to Issuer (Check all applicable)  X Director    10% Owner  X Officer (give title below)   Other (specify below)  **Executive Officer**  6. Individual or Joint/Group Filing (Check Applicable Line)  X Form filed by One Reporting Person   Form filed by More than One Reporting Person |

## Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) Code | V | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4 and 5) Amount | (A) or (D) | Price | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Common Stock | 09/13/2021 | | G[(1)] | V | 95,931 | D | $0.0000 | 99,998[(2)] | D | |
| Common Stock | 09/29/2021 | | G[(3)] | V | 120,000 | A | $0.0000 | 219,998 | D | |
| Common Stock | 12/02/2021 | | S[(4)] | | 1,500 | D | $242.4273[(5)] | 218,498[(2)] | D | |
| Common Stock | 12/02/2021 | | S[(4)] | | 4,066 | D | $246.1321[(6)] | 214,432 | D | |
| Common Stock | 12/02/2021 | | S[(4)] | | 5,900 | D | $243.4978[(7)] | 208,532 | D | |
| Common Stock | 12/02/2021 | | S[(4)] | | 9,234 | D | $244.4378[(8)] | 199,298 | D | |
| Common Stock | 12/02/2021 | | S[(4)] | | 9,300 | D | $245.5272[(9)] | 189,998 | D | |
| Common Stock | 09/13/2021 | | G[(1)] | V | 95,931 | A | $0.0000 | 284,810 | I | By Trust |
| Common Stock | 09/29/2021 | | G[(3)] | V | 120,000 | D | $0.0000 | 164,810 | I | By Trust |
| Common Stock | | | | | | | | 430.062[(10)] | I | By 401(k) Plan |

## Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
### (e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) Code | V | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) (A) | (D) | 6. Date Exercisable and Expiration Date (Month/Day/Year) Date Exercisable | Expiration Date | 7. Title and Amount of Securities Underlying Derivative Security (Instr. 3 and 4) Title | Amount or Number of Shares | 8. Price of Derivative Security (Instr. 5) | 9. Number of derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | | | | | | | | | | | |

**Explanation of Responses:**

1. Reflects the gift of shares to a revocable living trust, of which the reporting person and his spouse are trustees, and in which the reporting person has a beneficial interest.

2. Includes dividend equivalents paid on performance-based restricted stock units since the date of the reporting person's last filing through the date of the reported transaction that have been reinvested in additional performance-based restricted stock units.

3. Reflects the transfer of shares to the reporting person from a revocable living trust, of which the reporting person and his spouse are trustees, and in which the reporting person has a beneficial interest.

4. The reported transaction was effected pursuant to a Rule 10b5-1 trading plan previously entered into by the reporting person on September 3, 2021.

6. Price is the volume weighted average selling price of all sales by the reporting person on the transaction date within a one dollar range. Actual prices ranged from $245.95 to $246.49. The reporting person hereby undertakes to provide upon request of the Commission staff, the issuer, or a security holder of the issuer, full information regarding the number of shares sold at each separate price.

7. Price is the volume weighted average selling price of all sales by the reporting person on the transaction date within a one dollar range. Actual prices ranged from $242.95 to $243.92. The reporting person hereby undertakes to provide upon request of the Commission staff, the issuer, or a security holder of the issuer, full information regarding the number of shares sold at each separate price.

8. Price is the volume weighted average selling price of all sales by the reporting person on the transaction date within a one dollar range. Actual prices ranged from $243.93 to $244.91. The reporting person hereby undertakes to provide upon request of the Commission staff, the issuer, or a security holder of the issuer, full information regarding the number of shares sold at each separate price.

9. Price is the volume weighted average selling price of all sales by the reporting person on the transaction date within a one dollar range. Actual prices ranged from $244.95 to $245.93. The reporting person hereby undertakes to provide upon request of the Commission staff, the issuer, or a security holder of the issuer, full information regarding the number of shares sold at each separate price.

10. Shares held in the Target Corporation 401(k) Plan based on the plan statement as of September 30, 2021.

| Andrew J. Neuharth, Attorney-In-Fact | 12/06/2021 |
| --- | --- |
| ** Signature of Reporting Person | Date |

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

\* If the form is filed by more than one reporting person, *see* Instruction 4 (b)(v).

\*\* Intentional misstatements or omissions of facts constitute Federal Criminal Violations *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.**

**FORM 4**

# UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

## STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934
or Section 30(h) of the Investment Company Act of 1940

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0287 |
| Estimated average burden hours per response: | 0.5 |

☐ Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

| 1. Name and Address of Reporting Person[*] |
|---|
| Cornell Brian C |
| (Last)        (First)        (Middle) |
| 1000 NICOLLET MALL |
| (Street) |
| MINNEAPOLIS MN        55403 |
| (City)        (State)        (Zip) |

2. Issuer Name **and** Ticker or Trading Symbol
TARGET CORP [ TGT ]

3. Date of Earliest Transaction (Month/Day/Year)
03/16/2022

4. If Amendment, Date of Original Filed (Month/Day/Year)

5. Relationship of Reporting Person(s) to Issuer (Check all applicable)

| X | Director | | 10% Owner |
| X | Officer (give title below) | | Other (specify below) |

Executive Officer

6. Individual or Joint/Group Filing (Check Applicable Line)

| X | Form filed by One Reporting Person |
| | Form filed by More than One Reporting Person |

## Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 03/16/2022 | | S[(1)] | | 100 | D | $218.65 | 208,964 | D | |
| Common Stock | 03/16/2022 | | S[(1)] | | 1,500 | D | $215.0398[(2)] | 207,464 | D | |
| Common Stock | 03/16/2022 | | S[(1)] | | 1,600 | D | $212.5645[(3)] | 205,864 | D | |
| Common Stock | 03/16/2022 | | S[(1)] | | 3,609 | D | $213.5802[(4)] | 202,255 | D | |
| Common Stock | 03/16/2022 | | S[(1)] | | 5,600 | D | $216.163[(5)] | 196,655 | D | |
| Common Stock | 03/16/2022 | | S[(1)] | | 5,891 | D | $217.9511[(6)] | 190,764 | D | |
| Common Stock | 03/16/2022 | | S[(1)] | | 11,700 | D | $217.151[(7)] | 179,064 | D | |
| Common Stock | | | | | | | | 431.6203[(8)] | I | By 401(k) Plan |
| Common Stock | | | | | | | | 160,710 | I | By Trust |

## Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
### (e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Securities Underlying Derivative Security (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |

**Explanation of Responses:**

1. The reported transaction was effected pursuant to a Rule 10b5-1 trading plan previously entered into by the reporting person on September 3, 2021.

2. Price is the volume weighted average selling price of all sales by the reporting person on the transaction date within a one dollar range. Actual prices ranged from $214.61 to $215.58. The reporting person hereby undertakes to provide upon request of the Commission staff, the issuer, or a security holder of the issuer, full information regarding the number of shares sold at each separate price.

3. Price is the volume weighted average selling price of all sales by the reporting person on the transaction date within a one dollar range. Actual prices ranged from $212.12 to $213.11. The reporting person hereby undertakes to provide upon request of the Commission staff, the issuer, or a security holder of the issuer, full information regarding the number of shares sold at each separate price.

4. Price is the volume weighted average selling price of all sales by the reporting person on the transaction date within a one dollar range. Actual prices ranged from $213.13 to $214.12. The reporting person hereby undertakes to provide upon request of the Commission staff, the issuer, or a security holder of the issuer, full information regarding the number of shares sold at each separate price.

5. Price is the volume weighted average selling price of all sales by the reporting person on the transaction date within a one dollar range. Actual prices ranged from $215.61 to $216.60. The reporting person hereby undertakes to provide upon request of the Commission staff, the issuer, or a security holder of the issuer, full information regarding the number of shares sold at each separate price.

7. Price is the volume weighted average selling price of all sales by the reporting person on the transaction date within a one dollar range. Actual prices ranged from $216.63 to $217.61. The reporting person hereby undertakes to provide upon request of the Commission staff, the issuer, or a security holder of the issuer, full information regarding the number of shares sold at each separate price.

8. Shares held in the Target Corporation 401(k) Plan based on the plan statement as of December 31, 2021.

Andrew J. Neuharth, Attorney-In-Fact                    03/17/2022

** Signature of Reporting Person          Date

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, *see* Instruction 4 (b)(v).

** Intentional misstatements or omissions of facts constitute Federal Criminal Violations *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.**

## Rule 10b5-1 Sales Plan

This Rule 10b5-1 Sales Plan (including the accompanying Annexes, this "Sales Plan") is made and entered into as of this 3rd day of September 2021 by and between Brian Cornell ("Seller") and TD Ameritrade, Inc. ("Broker").

**WHEREAS**, Seller desires to establish this Sales Plan to sell shares of common stock, par value $0.0833 per share (the "Stock"), of Target Corporation (the "Issuer") in accordance with the requirements of Rule 10b5-1 ("Rule 10b5-1") under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), as further set forth herein.

**NOW**, **THEREFORE**, Seller and Broker hereby agree as follows:

(1) <u>Plan of Sale</u>.  Broker, acting as agent, shall effect one or more sales (each, a "Sale" and, collectively, the "Sales") of shares of the Stock (the "Shares") on behalf of Seller as set forth in the attached <u>Annex A</u> to this Sales Plan. Broker's obligations under this Sales Plan will not take effect until Broker approves and accepts this Sales Plan. It is the intent of the parties that this Sales Plan comply with the requirements of Rule 10b5-1(c)(1)(i)(B) under the Exchange Act and this Sales Plan shall be interpreted to comply with the requirements of Rule 10b5-1(c).

(2) <u>Fees</u>.  Seller shall pay to Broker fees as set forth in the attached <u>Annex D</u> to this Sales Plan.

(3) <u>Commencement</u>.  Sales under this Sales Plan shall commence no earlier than December 2, 2021, shall be made in accordance with the terms of <u>Annex A</u>, shall be suspended in accordance with <u>paragraph 9</u> below, and shall terminate in accordance with <u>paragraph 10</u> below.

(4) <u>Representations of Seller</u>.  Seller represents and warrants to Broker that, as of the date hereof:

(a) <u>Trading Policy</u>.  Seller is not aware of any material nonpublic information concerning the Issuer or any of its securities; Seller is entering into this Sales Plan in good faith; and this Sales Plan is not part of a plan or scheme to evade compliance with the federal or state securities laws. Seller has determined that this Sales Plan is consistent with the Issuer's insider trading policy; and Seller is not subject to any Issuer-directed blackout period that would prohibit Seller's entry into this Sales Plan.

(b) <u>Other Plans</u>.  Seller has disclosed to Broker information about each agreement for the purpose of establishing a trading plan that complies with Rule 10b5-1 with another broker-dealer or financial institution (each, a "Financial Institution") that Seller either (i) is currently party to or, (ii) within the past sixty (60) days, (A) has been party to, or (B) has communicated to another Financial Institution the possibility of establishing.

(c) <u>Disclosure to the Issuer</u>.  Seller has advised the Issuer's general counsel of Seller's intent to enter into this Sales Plan and has furnished the Issuer with a copy of this Sales Plan,

and the Issuer's general counsel has not advised Seller of any objection to this Sales Plan. The Issuer has executed and delivered to Broker the Issuer Certificate attached as <u>Annex B</u> to this Sales Plan.

(d) <u>Restrictions</u>.  Seller is not subject to any legal, regulatory, contractual or other restrictions to the Sales set forth in <u>Annex A</u> that would prevent Broker from conducting Sales in accordance with this Sales Plan.

(e) <u>No Liens</u>.  The Stock to be sold under this Sales Plan is owned free and clear by Seller and is not subject to any liens, security interests or other encumbrances or limitations on dispositions, other than those imposed by the Securities Act of 1933, as amended (the "Securities Act"), and the rules promulgated thereunder, including, but not limited to, Rule 144, Rule 145 and Rule 701, if applicable.

(f) <u>No Reliance</u>.  Seller has had an opportunity to consult with Seller's own advisors as to the legal, tax, financial and other aspects of this Sales Plan, including this Sales Plan's compliance with Rule 10b5-l and other federal and state laws and rules. Seller has not received or relied upon any representations from Broker concerning this Sales Plan's compliance with such laws or rules.

(5) <u>Agreements of Seller</u>.  Seller acknowledges and agrees to the following provisions:

(a) <u>Brokerage Account</u>.  Seller shall enter into a brokerage account agreement with Broker (the "Brokerage Account Agreement") in order to open a sole-purpose brokerage account with Broker in the name of and for the benefit of Seller (the "Plan Account") concurrent with acceptance and approval of this Sales Plan by Broker.

(b) <u>Delivery of the Stock</u>.  Seller shall deliver all Shares, including, as applicable, restricted securities, as defined in Rule 144, to be sold pursuant to this Sales Plan into the Plan Account prior to the commencement of any Sales under this Sales Plan. If the Sale amount is designated as an aggregate dollar amount, Seller agrees to deliver the Shares in an amount to be agreed upon by Seller and Broker as sufficient to effect Sales anticipated under this Sales Plan, and upon notification from Broker that the number of Shares in the Plan Account is less than the number of Shares that Broker estimates remain to be sold pursuant to this Sales Plan, Seller agrees to deliver promptly to the Plan Account the number of Shares of the Stock specified by Broker as necessary to eliminate this shortfall.

(c) <u>Rule 144</u>.  If the Shares are "restricted securities" and/or Seller is deemed an "affiliate" of the Issuer as those terms are defined under Rule 144 of the Securities Act, Seller agrees to complete, execute and deliver to Broker Seller's Rule 144 Representation Letter (in the form attached as <u>Annex C</u>) for Sales to be effected pursuant to Rule 144 under this Sales Plan at such times and in such numbers as Broker shall request. Seller agrees to notify Broker immediately if there is any change in Seller's employment, affiliate or non-affiliate status with the Issuer or in the Shares' status as restricted securities.

(d) <u>Hedging Transactions</u>.  While this Sales Plan is in effect, Seller shall comply with the prohibition set forth in Rule 10b5-l(c)(1)(i)(C) against entering into or altering a corresponding or hedging transaction or position with respect to the Stock, including,

2

without limitation, any securities convertible into or exchangeable for the Stock, or any option or other right to purchase or sell the Stock or such convertible or exchangeable securities.

(e) <u>Notice to Broker</u>.  Seller shall notify Broker immediately in the event that any of the statements in <u>paragraph 4</u>(d) or (e) become inaccurate. Seller shall notify Broker to terminate or suspend Sales, as appropriate, as soon as practicable upon the occurrence of any of the events contemplated in <u>paragraphs 9</u>, <u>10(c)</u> or <u>10(e)</u>.

(f) <u>Communications</u>.  Seller shall not, directly or indirectly, communicate any material nonpublic information relating to the Stock or the Issuer or its other securities to any employee of Broker.

(g) <u>Compliance with Applicable Laws</u>.  Seller shall comply with all applicable laws, rules and regulations, and Seller shall make all filings required under Sections 13 and 16 of the Exchange Act in a timely manner.

(h) <u>No Influence</u>.  Seller does not have, and shall not attempt to exercise, any influence over how, when or whether to effect Sales of the Stock pursuant to this Sales Plan; provided that Seller may terminate this Sales Plan in accordance with <u>paragraph 10(b)</u>.

(i) <u>Stock Non-Marginable</u>.  The Shares are not marginable and may not be used by Seller as collateral for any purpose.

(j) <u>Execution, Average Pricing and Pro Rata Allocation of Sales</u>.  All orders will be deemed day orders only and not held unless otherwise specified in <u>Annex A</u>. Broker may sell the Stock on any national securities exchange, in the over-the-counter market, on an automated trading system or otherwise in a manner consistent with Rule 144. Seller understands that Broker may effect Sales hereunder jointly with orders for other sellers of the Stock and that the price for executions resulting from bunched orders will be assigned to Seller's account, it being understood that such price must comply with the parameters specified in <u>Annex A</u>. To the extent that Broker administers other trading plans relating to the Stock, Broker may aggregate orders for Seller with orders under other sellers' trading plans for execution in a block and allocate each execution on a pro rata basis to each seller. In the event of partial execution of block orders, Broker shall allocate the proceeds of all the Stock actually sold on a particular day pursuant to all Rule 10b5-1 trading plans concerning the Stock that Broker manages pro rata based on the ratio of (x) the number of Shares of the Stock to be sold pursuant to the order instructions of each sales plan to (y) the total number of Shares of the Stock to be sold under all sales plans having the same type of order instructions.

(k) <u>Exclusivity</u>.  Until this Sales Plan has been terminated, Seller shall not enter into any agreement with, give any instructions to, or adopt a plan for trading with another Financial Institution with respect to the purchase or sale of the Stock or the Options (as defined below) that are referenced in <u>Annex A</u> of this Sales Plan for the purpose of establishing a trading plan that complies with Rule 10b5-1. Notwithstanding the foregoing, the Seller may adopt another plan for trading with another Financial Institution

3

with respect to the purchase or sale of Stock or Options that (i) has previously been communicated to Broker pursuant to Section 4(c) or (ii) for which the parties have otherwise communicated and agreed upon procedures such that the other plan will not conflict with this Sales Plan.

(l)   No Aggregation.  Seller shall not take, and shall not cause any person or entity with which Seller would be required to aggregate sales of the Stock pursuant to Rules 144(a)(2) or (e) to take, any action that would cause the Sales not to comply with Rule 144.

(m) Acknowledgment of Relief of Obligation to Effect Sales.  Broker shall be relieved of its obligation to sell the Stock as otherwise required hereby at any time when:

(i)   Broker has determined that:  (A) it is prohibited from doing so by a legal, contractual or regulatory restriction applicable to it or its affiliates or to Seller or Seller's affiliates; (B) a material adverse change in the financial markets, in the market activity in the Stock or in the internal systems of Broker or one of its affiliates has occurred, or an outbreak or escalation of hostilities or other event or circumstance has occurred (in each case, the effect of which is such as to make it, in the sole judgment of Broker, impracticable for Broker to sell the Stock); or (C) a trading suspension with respect to the Stock by the Securities and Exchange Commission (the "SEC") or the primary listed exchange or a delisting of the Stock or a banking moratorium has occurred (collectively, a "Broker Blackout"). Seller also understands that even in the absence of a Broker Blackout, Broker may be unable to effect Sales consistent with ordinary principles of best execution due to insufficient volume of trading, failure of the Stock to reach and sustain a limit order price, or other market factors in effect on the date of a Sale set forth in Annex A. If Broker cannot effect a Sale for any of the above reasons ("Unfilled Sales"), Broker shall effect such Unfilled Sales as promptly as practical after the cessation or termination of such cause, subject to the restrictions set forth in Annex A;

(ii) this Sales Plan is suspended in accordance with paragraph 9; or

(iii) this Sales Plan is terminated in accordance with paragraph 10.

(6) Form 144.  Broker will complete and file Forms 144 as needed on behalf of Seller. Seller understands and agrees that unless otherwise agreed or instructed, Broker will make a Form 144 filing on the day of the trade execution as necessary to comply with Rule 144 and the requirements of this Sales Plan, including as set forth on Annex A. Such Forms 144 shall specify that the Sales are being effected in accordance with a sales plan intended to comply with Rule 10b5-1. Seller hereby grants Broker a power of attorney to complete and file on behalf of Seller any required Forms 144. Seller agrees to provide Broker with such information as is reasonably necessary for Broker accurately and timely to complete and file the Forms 144. Broker agrees not to execute Sales at any time in an amount that exceeds the volume limit as then calculated under Rule 144(e) (for these purposes, Broker assumes that no sales of the Stock, other than Sales executed by Broker pursuant to this Sales Plan, that would be required to be included for purposes of this calculation have been or will be

executed by Seller or any other person whose sales would be required to be aggregated with sales by Seller for purposes of Rule 144 at any time during the period beginning three (3) months prior to the date of this Sales Plan and ending on the date of termination of this Sales Plan) and will execute the Sales in accordance with the manner of sale provisions under Rule 144(f), in each case in executing Sales under this Sales Plan.

(7) Trade Information.  Broker shall provide Seller (and/or its designee(s)) with written confirmation of Sales executed on behalf of Seller on a daily basis, showing the date of the transactions, the number of Shares of the Stock sold, the price received for each separate lot, high and low price, the volume weighted average price, Broker's compensation for the Sales, and settlement dates. Unless otherwise directed by Seller, such confirmations shall be delivered to the following, who are the initial designees of Seller for this purpose: andrew.neuharth@target.com, dave.donlin@target.com, and brian.downs@target.com.

(8) Issuer Restrictions.  If the Issuer enters into a transaction that imposes any legal, regulatory or contractual restrictions on trading by Seller, such as a stock offering requiring an affiliate lock-up (an "Issuer Restriction"), the Issuer and Seller shall provide Broker at least three (3) business days' prior notice of such Issuer Restriction, and Broker will cease effecting Sales under this Sales Plan and this Sales Plan may be terminated in the sole discretion of Broker. All required notifications to Broker shall be made in writing (signed by Seller) and in accordance with paragraph 17.

(9) Suspension.  Sales under this Sales Plan shall be suspended as follows:

(a) Promptly after the date on which Broker receives notice from Seller or the Issuer, or otherwise becomes aware, of legal, contractual or regulatory restrictions applicable to Seller or Seller's affiliates that would prevent Broker from selling the Stock under this Sales Plan (such notice merely stating that there is a restriction applicable to Seller without specifying the reasons for the restriction), including a restriction based on Seller's awareness of material nonpublic information in connection with a tender offer for the Issuer's securities (transactions on the basis of which Rule 14e-3 of the Exchange Act could be violated). Seller or the Issuer will notify Broker in writing of its intention and specify the beginning date and the ending date, to the extent that it is known, of the suspension or temporary withdrawal period. The notice shall be provided no less than two (2) business days prior to the beginning or end date of the suspension or temporary withdrawal period. As used herein, a "business day" shall mean any day on which The New York Stock Exchange is open for regular way trading.

(b) In the event that Broker becomes aware of material information concerning the Issuer or its securities, Broker may be required by applicable law or, in its sole discretion, find it advisable, to suspend Sales under this Sales Plan.

(10) Termination.  This Sales Plan will terminate on the earliest to occur of the following:

(a) at the close of trading on September 2, 2022 (not to exceed one (1) year from the date of this Sales Plan);

5

(b) promptly after the date on which Broker receives notice from Seller of the termination of this Sales Plan by Seller;

(c) upon the reasonable determination by Broker, or promptly after the reasonable determination by Seller and notice to Broker, that this Sales Plan does not comply with Rule 10b5-1;

(d) promptly after the date Broker is notified of the death of Seller;

(e) promptly after the date Broker is notified of Seller's liquidation, dissolution, bankruptcy or insolvency;

(f) immediately in the event that Seller fails to satisfy the delivery requirements for the Stock or Options as required by this Sales Plan;

(g) the sale of all the Shares of the Stock specified in Annex A;

(h) [reserved]; or

(i) in Broker's sole discretion, in the event of a Broker Blackout as described in paragraph 5 (m)(i), an Issuer Restriction as described in paragraph 8, a suspension as described in paragraph 9, or the suspension or termination of an existing Stock Plan Services Agreement between the Issuer and Broker.

(11)    Amendments.  This Sales Plan may be modified or amended only by a writing signed by the parties hereto; provided that any such modification or amendment shall only be permitted at a time when Seller is otherwise permitted to effect sales under the Issuer's trading policies and at a time when Seller is not aware of material nonpublic information concerning the Issuer or its securities. On the date of any such amendment or modification, Seller shall deliver to Broker (a) a certificate signed by Seller, certifying that the representations and warranties of Seller contained in this Sales Plan are true at and as of the date of such certificate as if made at and as of such date; and (b) an updated Issuer Certificate in the form set forth in Annex B, signed by the Issuer. In the event of a modification or amendment to this Sales Plan, or in the event Seller establishes a new plan after termination of this Sales Plan, no sales shall be effected during the thirty (30) days immediately following such modification or amendment (other than Sales already provided for in this Sales Plan prior to modification or amendment).

(12)    Indemnification.  Seller agrees that Broker and its affiliates and their respective directors, officers, employees, and agents (collectively, "Broker Persons") shall not have any liability whatsoever to Seller for any action taken or omitted to be taken in connection with this Sales Plan, the making of any Sale, or any amendment, modification, suspension or termination of this Sales Plan, except to the extent such liability is determined in a non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence, willful misconduct or bad faith of a Broker Person. Seller further agrees to hold each Broker Person free and harmless from any and all losses, damages, liabilities and expenses (including reasonable attorneys' fees and costs) incurred or sustained by such Broker Person in

6

connection with or arising out of any suit, action or proceeding relating to this Sales Plan, any Sale, or any amendment, modification, suspension or termination of this Sales Plan (each, an "Action") and to reimburse each Broker Person for its expenses, as they are incurred, in connection with any Action, except to the extent such loss, damage, liability or expense is determined in a non-appealable order of a court of competent jurisdiction to have resulted from a Broker Person's gross negligence, willful misconduct or bad faith. This paragraph 12 shall survive termination of this Sales Plan.

(13)   Limitation of Liability.  Notwithstanding any other provision hereof, Broker shall not be liable to Seller, and Seller shall not be liable to Broker, for:  (A) special, indirect, punitive, exemplary or consequential damages, or incidental losses or damages of any kind, even if advised of the possibility of such losses or damages or if such losses or damages could have been reasonably foreseen; or (B) any failure to perform or to cease performance or any delay in performance that results from a cause or circumstance that is beyond its reasonable control, including, but not limited to, failure of electronic or mechanical equipment, strikes, failure of common carrier or utility systems, severe weather, market disruptions or other causes commonly known as "acts of God." Notwithstanding any other provision hereof, Broker shall not be liable to Seller for (A) the exercise of discretionary authority or discretionary control under this Sales Plan, if any, or (B) any failure to effect a Sale required by this Sales Plan, except for failures to effect Sales as a result of the gross negligence, willful misconduct or bad faith of Broker.

(14)   Stock Options.  Seller represents and warrants that any employee stock options listed on Annex A ("Options") are held free and clear without liens, security interests or other encumbrances or limitations on exercise of the vested portion thereof, other than the requirement that Seller comply with the exercise provisions of such Options. Broker is authorized to exercise Options and execute the transactions in respect of the underlying Stock pursuant to Annex A. Under this provision, any Options not exercised and underlying Stock not sold as specified in Annex A because the parameters under this Sales Plan were not met, will carry forward as specified in Annex A until the Options are exercised or the underlying Stock is sold. To the extent that the exercise price and any withholding tax relating to the exercise of an Option and Sale of the underlying Stock under this Sales Plan are to be paid from the proceeds of such exercise and Sale, Broker will deduct from the proceeds of each Option exercised and the underlying Stock sold the sum of the exercise price and any withholding tax. The resulting amount will then be remitted to the Issuer. After remitting payment to the Issuer for the applicable exercise price and withholding tax, any commissions and/or fees due and payable to Broker shall be deducted from the proceeds of such exercise and Sale and paid to Broker. In connection with the exercise of Options under this Sales Plan, Seller authorizes and instructs the Issuer to register, or cause its agent(s) to register, the Stock to be issued upon the exercise of Options in the name of Broker (or its designated nominee), which is the agent and nominee of Seller (or in the event that is not permissible, in Seller's name). Seller also authorizes and instructs the Issuer to deliver, or cause its agent(s) to deliver, within three (3) business days, the Stock issued pursuant to the Option exercise to Broker in exchange for funds from Broker representing the exercise price (plus any applicable taxes). Seller cannot revoke or rescind this authorization and instruction under any circumstance while this Sales Plan is in effect. Seller hereby grants a security interest to Broker in the Stock to be issued pursuant to the exercise of the Options. This security interest

7

will not terminate even if the securities are delivered to Seller contrary to these instructions. If Seller is selling all or some of the Stock to be issued pursuant to the exercise of Options, Seller agrees that Seller is responsible for any and all dividends, rights or payments of any kind that are or may become payable to any purchaser of the Stock prior to the registration of the Stock in the name of Broker and, if Seller is holding all or some of the Stock, Seller agrees that Seller shall not be entitled to such dividends, rights or payments prior to the issuance of the Stock. Seller agrees to pay or deliver to Broker upon demand, any and all funds, securities, dividends or distributions due to it, if, for any reason, the Stock to be issued pursuant to the exercise of Option is not promptly delivered to Broker.

(15) <u>Stock Splits, Reincorporations and Reorganizations</u>.

    (a) In the event of a stock split or reverse stock split, the quantity and price at which the Stock is to be sold will be adjusted proportionately.

    (b) In the event of a stock dividend or spin-off, the quantity and price at which the Stock is to be sold will be adjusted as instructed by the Issuer.  Any adjustment shall only become  effective upon receipt by Broker of written notice from the Issuer as to the occurrence of the  dividend or spin-off, as well as specific instructions as to the adjustment to the quantity  and price at which the Stock is to be sold.

    (c) In the event of a reincorporation or other corporate reorganization resulting in an automatic share-for-share exchange of new shares of the Issuer for the Stock subject to this Sales Plan, then the new shares will automatically replace the Stock originally specified in  this Sales Plan.

(16)     <u>Agreement to Arbitrate</u>.  Any dispute between Seller and Broker arising out of, relating to or in connection with this Sales Plan or any transaction relating to this Sales Plan shall be determined only by arbitration as provided in the Brokerage Account Agreement, as amended.

(17)     <u>Notices</u>.

    (a) All notices to Broker under this Sales Plan shall be provided in writing to:

TD Ameritrade, Inc.
1 Plaza 4A
Jersey City, NJ 07311
Attention: Stock Plan Services
Brian.Burke@tdameritrade.com

    (b) All notices to Seller under this Sales Plan shall be provided in writing to:

Target Corporation
1000 Nicollet Mall, TPS-2660
Minneapolis, MN 55403
Attention: Brian Cornell

8

Brian.Cornell@Target.com

with a copy to:

Target Corporation
1000 Nicollet Mall, TPS-3155
Minneapolis, MN 55403
Attention: Andrew Neuharth
Andrew.Neuharth@Target.com

(18)    Inconsistency with Law.  If any provision of this Sales Plan is or becomes inconsistent with any applicable present or future law, rule or regulation, that provision will be deemed modified or, if necessary, rescinded in order to comply with the relevant law, rule or regulation. All other provisions of this Sales Plan will continue and remain in full force and effect.

(19)    Governing Law.  This Sales Plan shall be governed by and construed in accordance with the internal laws of the State of New York.

(20)    Entire Agreement.  This Sales Plan and the Brokerage Account Agreement constitute the entire agreement between the parties with respect to this Sales Plan and supersede any prior agreements or understandings with regard to this Sales Plan.

(21)    Counterparts.  This Sales Plan may be signed in any number of counterparts, each of which shall be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument.

[*Signature Page Follows*]

A-1

**Annex A**

**Name of Seller:**  Brian Cornell

**X I am an officer, director or 10% shareholder of the Issuer.**

**X I may be deemed an affiliate of the Issuer as defined in Rule 144 under the Securities Act.**

**Name of the Issuer:**  Target Corporation

**Selling Instructions:**

**On each of the following trading days sell 30,000 shares at market:**

**December 2, 2021**

**March 16, 2022**

**June 2, 2022**

**September 1, 2022**

<u>**Note:**</u>  It is Seller's responsibility to ensure that any Options will be vested prior to their associated  sale periods listed herein and will not expire prior to or during such sale periods. Seller also  acknowledges responsibility for notifying Broker in the event of an expiration of the Options under the Issuer's stock option plan that will prevent the occurrence of one or more transactions if this Sales  Plan contains Options. Seller represents that the information in this <u>Annex A</u> is accurate.

A-1

**Annex B**

## Issuer Certificate

(1) Target Corporation (the "Issuer") certifies that it has approved and retained a copy of the Rule 10b5-1 Sales Plan, dated as of September 3, 2021 (the "Sales Plan"), by and between Brian Cornell ("Seller") and TD Ameritrade, Inc. ("Broker") relating to the common stock of the Issuer (the "Stock").

(2) The Sales Plan is consistent with the Issuer's insider trading policies and, to the best of the Issuer's knowledge, there are no legal, contractual or regulatory restrictions applicable to the Stock, Seller or Seller's affiliates as of the date of this representation that would prohibit Seller from either entering into the Sales Plan or selling the Stock pursuant to the Sales Plan.

(3) The Issuer agrees to provide notice as soon as practicable to Broker in the event that the Sales Plan becomes inconsistent with the Issuer's insider trading policies, or Seller ceases to be an affiliate of the Issuer, or the Issuer becomes aware of legal, contractual or regulatory restrictions applicable to the Stock, Seller or Seller's affiliates that would prohibit any sale pursuant to the Sales Plan during the term of the Sales Plan (such notice merely stating that there is a restriction applicable to Seller without specifying the reasons for such restriction). In any event, the Issuer shall not communicate any material nonpublic information about the Issuer or its securities to Broker with respect to the Sales Plan. Such notice shall be provided to Broker at ExecutivePlanServices@tdameritrade.com and shall indicate the anticipated duration of the restriction but shall not include any other information about the nature of the restriction or its applicability to Seller. Any such notice is provided under the express condition that Broker shall (a) maintain such information in confidence, (b) share it only with those persons who reasonably need to know the information in the execution and administration of the Sales Plan, and (c) use any information concerning or contained in such notice (including existence of the notice) for no purpose other than the execution and administration of the Sales Plan; provided, however, that nothing in this paragraph shall prohibit Broker or its attorney from responding to any inquiry of the Securities and Exchange Commission, the Financial Industry Regulatory Authority, The New York Stock Exchange, any other self-regulatory organization, any state securities regulatory authority or any other governmental authority regarding such notice or its underlying facts and circumstances.

(4) To avoid delays in connection with transfers of stock certificates and settlement of transactions involving restricted securities, if any, under the Sales Plan, and in acknowledgment of Broker's agreement in the Sales Plan that sales of Stock under the Sales Plan will be effected in compliance with Rule 144, the Issuer agrees that it will, within a commercially reasonable time after the Issuer's receipt of evidence, reasonably satisfactory to the Issuer and its counsel, that Rule 144 has been complied with, instruct its transfer agent to process the transfer of Shares and issue a new certificate or book-entry record to Seller's transferee or nominee that does not bear any legend or statement restricting its transferability to a buyer.

(5) If Seller is exercising options under the Sales Plan, then the Issuer acknowledges that Seller has authorized Broker to serve as Seller's agent and attorney-in-fact to exercise certain options to purchase the Stock from time to time pursuant to the Sales Plan. The Issuer agrees to accept, acknowledge and effect the exercise of such options by Broker and the delivery of the underlying Stock to Broker (free of any legend or statement restricting its transferability to a buyer) upon receipt of a completed stock option exercise form (if required).

B-1

**IN WITNESS WHEREOF**, the undersigned has signed this Issuer Certificate as of the date specified below.

**TARGET CORPORATION**

By: _____     Date: ___9/3/2021___

Name: Andrew Neuharth

Title:   Director Counsel